David **FIGUEROA**, Plaintiff,

v.

Michael J. **ASTRUE**, Commissioner of Social Security, Defendant.

No. 07 Civ 5572(VM).

United States District Court, S.D. New York.

Sept. 29, 2008.

Warren Scott Goodman, Law Office of Warren S. Goodman, Larchmont, NY, for plaintiff.

John E. Gura, Jr., United States Attorney's Office, New York, NY, for defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

## I. BACKGROUND[1]

Plaintiff David Figueroa ("Figueroa") brought this action for review of the final determination by the Commissioner of Social Security (the "Commissioner") denying Figueroa's claim for Social Security Disability ("SSD") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g) (" § 405(g)").[2] The Commissioner moves for judgment on the pleadings on the grounds that the determination of the Administrative Law Judge ("ALJ") is supported by substantial evidence.

Figueroa applied for SSD benefits on July 31, 2002. His application claimed he had been disabled since July 31, 2000 because of a heart condition, diabetes, high blood pressure, high cholesterol, feet pain, headaches, weakness and fatigue.[3] Figueroa had been a New York City police officer for sixteen years when he suffered a heart attack on January 5, 1998 after making an arrest. Figueroa was taken to Jacobi Medical Center where he was diagnosed with an acute myocardial infarction of the inferoposterior. The hospital records also indicate that Figueroa suffered from diabetes mellitus, which he had been diagnosed with several years prior. At this point Figueroa stopped working, and the New York City Police Department retired him in September 1998.

Figueroa's application for SSD benefits was denied in September 2002 in an initial administrative review. Figueroa then requested a hearing, which was held on December 9, 2004. The ALJ held a supplemental hearing on April 26, 2005. The ALJ considered the case de novo, and, by a decision dated October 24, 2005, determined that Figueroa was not eligible for disability insurance. The ALJ found that Figueroa retained residual functional capacity to perform light or sedentary work even though his health problems qualified as a "severe impairment." [4]

On April 6, 2007, the Appeals Council denied Figueroa's request for review and the ALJ's decision became the final decision of the Commissioner. Figueroa brought this action on June 11, 2007 seeking review of the Commissioner's denial of benefits.

1. The factual summary derives from the administrative record filed by the Commissioner which, except where necessary, the Court will not cite further. Citations to this record will be referred to as "Tr."

2. The plaintiff alleges in his complaint that he is entitled to receive Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c). The Court will not address the claim for SSI because the ALJ decision pertained to SSD benefits only.

3. It appears from the record that Figueroa first applied for benefits on May 2, 2000 and was denied in July 2000. The Government, however, indicates May 2, 1999 as the date of the first application, perhaps because in denying Figueroa's application, the Social Security Administration reported the filing date as May 2, 1999. Figueroa also refers to the May 2, 1999 date in his second disability application.

4. The ALJ also emphasized at the time of the hearing that Figueroa was not currently insured and therefore his recent diabetes complications could not be considered. A claimant is insured for the month if "he had not less than 20 quarters of coverage during the 40–quarter period which ends with the quarter in which such month occurred." 42 U.S.C. § 423(1)(B)(I). Because Figueroa did not earn any work credits for any quarter after he left the Police Department in 1998, his date last insured was twenty quarters later on December 31, 2003.

The Commissioner filed a motion for judgment on the pleadings on June 20, 2008. Pursuant to the Court's Order dated June 12, 2008, Figueroa's reply was due by July 21, 2008. Figueroa has not responded to the Court's Order. Accordingly, having reviewed Figueroa's application and the Commissioner's motion for judgment on the pleadings requesting dismissal of this action, the Court grants the motion.

## II. *Discussion*

After reviewing the record, the Court is persuaded that there is substantial evidence to support the Commissioner's determination that, during the period in which Figueroa applied for SSD benefits, Figueroa was not disabled within the definition of that term in the Act. *See* 42 U.S.C. § 423(d). Section 405(g) provides that "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." *Id.* § 405(g); *see also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). A fact is supported by substantial evidence when the supporting evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420 (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d).

In determining that Figueroa was not disabled, the ALJ utilized the five-step assessment for the adjudication of disability claims contained in 20 C.F.R. §§ 404.1520(a)(4) and 416.920, as elaborated by the Second Circuit in *Shaw v. Chater,* 221 F.3d 126, 132 (2d. Cir.2000) and *DeChirico v. Callahan,* 134 F.3d 1177, 1179 (2d Cir.1998). The steps, as stated in *Shaw,* are:

(1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity[;]

(2) If not, the Commission considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities[;]

(3) If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience[;]

(4) If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work[; and]

(5) If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

221 F.3d at 132.

Although the ALJ found that Figueroa had not engaged in substantial gainful ac-

tivities during the relevant period, and his physical difficulties were sufficiently severe to impair basic work functions, the ALJ determined that the severity of Figueroa's ailment did not equate to those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P ("Appendix 1"). The ALJ found that Figueroa did not meet the requirements of the regulations, pertaining to either cardiac impairment[5] or diabetes, and thus, his ailments did not reach the level of presumptive disability. The Court notes that Appendix 1 lists diabetes mellitus as a presumptive impairment if the claimant also has "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." Appendix 1 § 9.08(A). The ALJ found that Figueroa had not presented "the necessary findings on examination or on objective or diagnostic evaluation and testing to conclude" that Figueroa met the requirements of a per se disability. Tr. 15.

While an examining neurologist (the "Neurologist") found Figueroa's symptoms indicated severe generalized peripheral neuropathy, evidence from the state agency medical consultant (the "Medical Consultant") and medical expert (the "Medical Expert"), who reviewed the record after the first hearing, provided the ALJ with substantial evidence to support a finding that the neuropathy was not "demonstrated by significant and persistent disorganization of motor function" and did not result in "sustained disturbance" of Figueroa's movements prior to December 2003. Appendix 1 § 9.08(A). The Medical Consultant, reporting on Fi-

gueroa's extremeties, noted that "[a]ll joints exhibit full range of motion without pain, swelling, redness, or heat." Tr. 570. Furthermore, the Medical Consultant found no problems with neurologocial functions, even observing that Figueora was able to tandem gait. Similarly, the Medical Expert found that Figueroa did not suffer from any diabetes complications at the time he was insured.

With respect to step four, the ALJ, relying on medical opinions, found that Figueroa had the residual functional capacity to "lift and carry 20–25 pounds occasionally and 10 pounds frequently, could stand 6 hours in an 8 hour day but only 1–2 hours without interruption, sit without limitation, could only occasionally squat, climb ramps and stairs, could never climb ladders/scaffolds, could not work at heights, or in chemicals, temperature extremes or fumes." Tr. 16. Figueroa's lawyer disputed these findings and urged the ALJ to rely on the prognosis of a treating physician (the "Treating Physician") who found Figueroa to be disabled on October 2 9, 2003. The ALJ found that the Treating Physician's findings were not supported by medical evidence, appeared to overstate Figueroa's disability, and did not consider whether Figueroa could perform light or sedentary work.

The ALJ, taking Figueroa's limitations into account, determined that Figueroa could not perform his previous duties as a police officer. Under the fifth step of the analysis the ALJ considered Figueroa's residual work capacity, educational and work experience, as well as his age at the time he was insured for disability, and determined that he could perform a number of

---

5. The cardiovascular impairments listed in Appendix 1 include: chronic heart failure, ischemic heart disease, recurrent arrythmias, symptomatic congenital heart disease, recovery from heart transplant surgery, aneurysm of aorta or major branches, chronic venous insufficiency of the lower extremities, and peripheral arterial disease. *See* 20 C.F.R. Part 404, Subpart P, App, 1, § 4.01–4.12.

jobs that exist in the national economy. This conclusion was supported by the opinion of a vocational expert § the ("Vocational Expert") who testified that a 47 year old with a high school diploma, past work experience as a police officer, and Figueroa's residual work capacity could work as a ticket taker, order clerk, or dispatcher. Tr. 18, 699–702. On this basis, the ALJ denied Figueroa's claim that he was disabled and eligible for SSD benefits.

The Court finds that the record as a whole contains substantial evidence to support the ALJ's determination. In particular, the Medical Expert concluded on January 5, 2004 that, prior to Figueroa's date last insured, Figueroa's diabetes was mild, and did not affect his ability to work. Additionally, the Medical Expert reported that although Figueroa's cardiac impairment reduced his functioning capacity, he could still participate in limited light work. This conclusion was consistent with the Medical Consultant who evaluated Figueroa pursuant to his July 2002 application. The Court finds that even if the Treating Physician's opinion were reliable, there would be substantial evidence on the record to support the ALJ's decision because of the reports by the other medical experts.

The Court is persuaded there is substantial evidence on the record showing Figueroa possesses the residual functional capacity to perform at least sedentary work. Figueroa testified he had trouble sitting for long periods of time, but there is insufficient medical testimony on the record to support this statement. Even the Treating Physician opined that Figueroa could sit for an entire eight-hour work day. Additionally, the report of the Vocational Expert provides further support for the ALJ's conclusion.

The Court finds that the evidence provided by Figueroa's testimony, the Medical Expert, the Medical Consultant, and the Vocational Expert, is sufficient to support a determination that the ALJ's denial of SSD benefits was based on substantial evidence. Accordingly, the Court grants the Commissioner's motion for judgment on the pleadings.

## III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket # 8) of defendant Commissioner of Social Security for judgment on the pleadings dismissing the complaint of plaintiff David Figueroa is GRANTED.

The Clerk of Court is directed to withdraw any pending motions and close this case.

**SO ORDERED.**